IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN SMITH, et al., | No. C 11-02411 SI |
| Plaintiffs, | **ORDER GRANTING MOTION TO STRIKE** |
| v. | |
| THE SANTA ROSA PRESS DEMOCRAT, et al., | |
| Defendants. | |

Currently before the Court is defendants' motion to strike the complaint under California's Anti-SLAPP statute, C.C.P. § 425.16. This matter is currently set for hearing on October 28, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the following reasons, the Court GRANTS defendants' motion.

## BACKGROUND

This case stems from a series of articles *The Santa Rosa Press Democrat* ("*Press Democrat*") published from April 2010 through December 2010 reporting about legal actions brought against plaintiff Gwendolyn Smith by her former landlords in Sonoma County. *See* Complaint, ¶ 10; Amended Complaint, ¶ 11; *see also* Declaration of Paul Payne, Ex. A.[1] These articles reported on a lawsuit

---

[1] Plaintiff does not specifically identify each *Press Democrat* article she takes issue with, however, defendants provide copies of all articles published by *The Press Democrat* regarding the legal proceedings between plaintiff and her former landlords. *See* Payne Decl., Ex. A. These articles were published on April 8, 2010 (at www.pressdemocrat.com) and April 9, 2010 (in print; collectively "4/9/10 article"), August 12, 2010, August 14, 2010, August 15, 2010, August 25, 2010, September 2, 2010, November 5, 2010 and December 21, 2010.

1 between plaintiff and her former landlord Barbara Wilt for unpaid rent and utilities which resulted in
2 a $42,500 default judgment against plaintiff; as well as an eviction proceeding between plaintiff and
3 Connie Cook. *See* Payne Decl., Ex. A at A1 (4/9/10 article). The articles detail the allegations raised
4 in the legal proceedings, quoting from trial briefs and statements made in open court. The articles also
5 included comments from plaintiff's former landlords about the difficulties plaintiff's alleged failure to
6 pay rent and utilities – as well as the state the units were left in when plaintiff vacated them – caused
7 the former landlords and the support the landlords received from the community. *Id*.; *see also id.*, A6 -
8 A7 (8/14/10 article); A8 (8/15/10 article); A9 (8/25/10 article); A10 - A11 (9/2/10 article); and A12 -
9 A14 (11/5/10 article). The last article in the series reported that plaintiff had apparently engaged in
10 substantially similar conduct as alleged in the California cases in Oregon, and that plaintiff was cited
11 with two instances of criminal theft by deception for allegedly failing to pay rent in Oregon. *Id*., A15 -
12 A16.

13 On May 17, 2011, plaintiff's "complaint for defamation" was filed, naming *The Santa Rosa*
14 *Press Democrat*, Paul Payne, Catherine Barnett, and Bruce Kyse as defendants ("Press Democrat
15 defendants"). In the complaint, plaintiff alleges causes of action for invasion of privacy, false light and
16 defamation per se. Complaint, ¶ 6. Plaintiff asserts that the articles in the *Press Democrat* invaded her
17 privacy – as the court proceedings discussed in the articles were allegedly under seal – and that the
18 articles contained false light and defamatory matter in implying plaintiff was a "scammer," that plaintiff
19 had "landlord-tenant cases in Delaware and Missouri," and that the Press Democrat defendants had
20 attempted to interview plaintiff when they had not. *Id*., ¶ 10.[2]

21 On July 29, 2011, the Press Democrat defendants filed their answer to the Complaint. On
22 August 23, 2011, without leave of Court, plaintiff filed an "Amended Complaint." The Amended
23 Complaint reiterated the claims and allegations in the initial Complaint, but also added claims for
24 intrusion of solitude, public disclosure of private facts and civil conspiracy. Amended Complaint, ¶ 7.
25 Plaintiff also asserted that the *Press Democrat* articles implied that plaintiff was filthy, a criminal, used

---

[2] There are two plaintiffs named in the Complaints, Ms. Smith and Ms. Smith's son Zeus Harrison Smith. As plaintiff has failed to identify any allegedly false statements about Zeus Harrison Smith in any of the articles - in either of her complaints or in her Opposition brief – the Court DISMISSES Zeus Harrison Smith as a plaintiff.

**United States District Court**
For the Northern District of California

aliases, and was a "serial scammer." *Id.*, ¶ 12.[3]

Currently before the Court is the Press Democrat defendants' motion to strike under California's anti-SLAPP statute. Cal. Code. Civ. Proc. § 425.16. Defendants bring their motion to strike against the claims raised in both the original and Amended Complaints. Defendants primarily argue that plaintiff cannot establish a probability of success on her complaint, as required under the anti-SLAPP statute, because the statements plaintiff complains of are absolutely privileged fair and true reports of judicial proceedings under California Civil Code section 47(d). On September 30, 2011, plaintiff filed her opposition to the motion to dismiss, and served a request that the hearing on this matter be continued to allow plaintiff the chance to take discovery regarding defendants' actual malice. *See* Docket Nos. 23; 31.[4]

**LEGAL STANDARD**

The California anti-SLAPP statute permits defendants to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the . . . right of petition or free speech . . . in connection with a public issue," unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* at § 425.16(b)(2). If a defendant prevails in bringing a motion to strike, that defendant "shall be entitled to recover his or her attorney's fees and costs." *Id.* § 425.16(c). Although it is a state statute, California's anti-SLAPP protections apply to state law claims brought in federal court. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999). In evaluating an anti-SLAPP motion, courts engage in a two-part

---

[3] Defendants argue that plaintiff has failed to adequately identify which precise statements in specific articles Smith claims are defamatory. *See* Motion at 15. In Opposition, plaintiff contends that she adequately identified the specific defamatory statements in paragraph 12 of her Amended Complaint. The Court, therefore, will confine its analysis to the specific statements identified by Smith in paragraph 12 of her Amended Complaint.

[4] Plaintiff served defendants but did not file her ex parte request for a continuance with the Court. Defendants nonetheless submitted an opposition to it. In order to have all arguments before the Court in ruling on the pending motion, the Court ordered defendants to file the copy of plaintiff's ex parte request that was served on them. Docket No. 30.

inquiry. "First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech . . . Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1110 (9th Cir. 2003).

## DISCUSSION

### I. The Anti-SLAPP Statute Applies to the Articles at Issue

Defendants have made a prima facie showing that the news articles at issue are covered by the anti-SLAPP statute as statements of public interest made in connection with official proceedings under section 425.16(e)(2), as well as public statements made in connection with an issue of public interest under section 425.16(e)(4). Courts have routinely recognized that news articles regarding judicial proceedings are covered by section 425.16(e)(2). *See, e.g., Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855 (Cal. App. 1995) (newspaper articles regarding county enforcement actions and a resulting civil rights lawsuit against university covered by section 425.16(e)(2)); *Sipple v. Foundation for Nat. Progress*, 71 Cal. App. 4th 226 (Cal. App. 1999) (news magazine article regarding custody dispute between political consultant and spouse covered by 425.16(e)(2)).

Similarly, as the subject matter of the articles – contentious landlord-tenant disputes and the consequences thereof – are a matter of significant public interest, the articles are statements made in furtherance of free speech in connection with an issue of public interest under section 425.16(e)(4). *See, e.g., Sipple*, 71 Cal. App. 4th at 238 (articles regarding domestic violence matter of public interest); *Carver v. Bonds*, 135 Cal. App. 4th 328, 342 (Cal. App. 2005) (facts and opinions in newspaper article regarding complaints against a podiatrist "plainly" conduct within scope of (e)(4)).

As the articles fall within the scope of the anti-SLAPP statute, section 425.16(e), plaintiff must demonstrate a probability of success on the merits of her claims to avoid the motion to strike. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d at 1110. In doing so, plaintiff cannot simply rest on allegations, but must establish *evidentiary* support for her claim. *See, e.g., Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (citing cases).

4

## II. Plaintiff Cannot Demonstrate a Probability of Prevailing

### A. Statements Protected by Fair and True Report Privilege

California Civil Code section 47(d) provides an absolute privilege to a "fair and true" report of judicial proceedings in a public journal. Cal. Civ. Code 47(d)(1)(A). Whether a report, like the series of articles at issue here, is fair and true is a question of law when there is no dispute as to what occurred in the proceeding or the contents of the report. *See Dorsey v. National Enquirer, Inc*., 973 F.2d 1431, 1435 (9th Cir. 1992). Moreover, where a newspaper accurately reports statements made in a judicial proceeding, they are protected under the privilege irrespective of whether the statements are in fact true or the reporter's actual malice. *See, e.g., McClatchy Newspapers v. Superior Court*, 189 Cal. App. 3d 961, 974 (Cal. App. 1987) ("Even when the print media publish an accurate report of a statement they know to be false, the protective cloak of [Civil Code 47(d)] remains intact.").

As noted above, plaintiff complains that defendants' articles defamed her by characterizing her as a "scammer," "serial squatter," a "criminal" and having landlord tenant cases in Delaware and Missouri. With respect to articles referring to plaintiff as a "scammer" and "serial squatter," defendants show and plaintiff does not dispute, that these terms were used to refer to Ms. Smith by counsel and parties in the court proceedings. For example, the April 9, 2010 article quoted a trial brief – written by the attorney for Barbara Wilt – describing plaintiff as running a "scam pattern" in refusing to pay rent. Payne Decl., Ex. A at A1; *see also* Trial Brief in *Wilt v. Smith*, Ex. B at B1 ("Gwen Smith runs a scam pattern"); *see also* Ex. A at A10 (quoting courtroom outburst of Barbara Wilt "She's such a scammer."); Trial Brief in *Cook v. Smith*, Ex. C at C1 ("Smith . . . runs a scam and pattern wherein Smith seeks a kind landlord, moves in and never intends to pay anything but the first month's rent.").

The fact that the term "serial squatter" may not have been used in a Court document or proceeding doesn't defeat the application of the privilege to that statement. The exact phrase was used by the attorney for Connie Cook to describe the evidence in Cook's case against Smith, bringing it within the confines of the privilege. Ex. A at A12 ("She is a serial squatter. I think the evidence clearly establishes that."); *see also Dorsey*, 973 F.2d at 1437 (article's use of out-of-court statements made by a party and investigator privileged because statements "detail the circumstances" and theories at play in the court proceedings). Moreover, under California law the fair and true report privilege is not

limited to verbatim quotations from court proceedings, it extends to other statements that capture the "gist and sting" of the comments made in the official proceedings. As the Ninth Circuit noted in *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992), "[u]nder California law, a newspaper report is 'fair and true' if it captures '"the substance, the gist, the sting of the libelous charge."'" . . . The news article need not track verbatim the underlying proceeding. Only if the deviation is of such a 'substantial character' that it 'produces a different effect' on the reader will the privilege be suspended." (internal citations omitted). Here, the allegation that Smith was a "serial squatter" has the same "gist and sting" as the allegations that Smith repeatedly ran scams where she moved into housing units with no intention of paying rent.

With respect to Smith's allegation that the articles defamed her by mischaracterizing her as a criminal, neither the Complaint nor Amended Complaint identifies where in the articles the *Press Democrat* characterized Smith as a "criminal." However, even if Smith was able to identify particular passages that implied that Smith was a criminal, that claim would likewise fail because any such implication falls within the "gist and sting" of the *Press Democrat's* reporting that Smith had been cited with felony counts of theft by deception for allegedly failing to pay rent by authorities in Oregon. *See* Payne Decl., Ex. A at A15; *see also* Ex. C, C25 - C30 (criminal incident reports).[5]

Finally with respect to the allegation that defendants defamed Smith through the statement that Smith had "landlord-tenant cases in Delaware and Missouri," the Court finds that this statement falls within the fair and true report privilege. As an initial matter, the Court notes that Smith has failed to meet her burden on this motion to submit evidence supporting her case. She has failed, for example, to submit a declaration signed under penalty of perjury that she was not a party to a landlord-tenant case in Delaware or Missouri. As noted above, in opposing a special motion to strike, a plaintiff must submit admissible evidence demonstrating her probability of success on the merits of her claims. However, even if Smith had submitted evidence demonstrating that she has not been party to landlord-tenant cases in Delaware or Missouri, the Court would find that this allegation – when considered with the allegations Smith does not contest – does not alter the gist and sting of the *Press Democrats'* articles.

---

[5] The Court notes that plaintiff does not allege that defendants actually called Smith a criminal, only that the articles implied it.

6

In particular, Smith does not dispute she has been party to landlord-tenant disputes in California, Oregon, Arizona, Hawaii and Wisconsin. *See* Payne Decl., Ex. A at A13. Smith does not dispute that a judgment of $80,000 was entered against her in a landlord-tenant case in Wisconsin, Ex. B. at B23 - B24 (Wisconsin judgment), or that the California courts have entered judgments for over $90,000 against her for the same conduct. *Id.*, Ex. C21 - C23. In these circumstances, the Court finds as a matter of law that the gist and sting of the articles is not materially altered even if plaintiff had proof she was not involved in landlord-tenant disputes in Delaware or Missouri. *See, e.g., Carver v. Bonds*, 135 Cal. App. 4th 351-52 (finding alleged overstatement of number of medical board complaints did not alter sting of article that plaintiff had received an unusually large number of complaints).

Plaintiff's Opposition makes it clear that plaintiff's main grudge against the *Press Democrat* articles is not that the articles did not reflect what actually transpired in the judicial proceedings, but instead that plaintiff feels her side of the story regarding the unfairness of the underlying proceedings was omitted from the articles. For example, in her Opposition, plaintiff argues that a fair and true report should have included plaintiff's belief that the default judgment in the Wilt case was unjust and excessive and her rental contract was void *ab initio*. Oppo. at 3. However, the fair and true report privilege does not require the *Press Democrat* to have presented plaintiff's side of her story or her "key facts." *See, e.g., Dorsey*, 973 F.2d at 1436 (Cal. Civil Code 47(d) "'does not require the reporter to resolve the merits of the charges, nor does it require that he present the [plaintiff's] version of the facts.'" (quoting *Reeves v. American Broadcasting Cos.*, 719 F.2d 602, 606-07 (2d Cir. 1983)); *see also Paterno v. Superior Court*, 163 Cal. App. 4th 1342, 1353 (Cal. App. 2008) (confirming there is no constitutional obligation to incorporate plaintiff's side of the story in an article; "There is no constitutional mandate requiring the press to adopt a 'he said, she said' style of reporting."). The Court notes, however, that the April 9, 2010 article – reporting on the default judgment in Wilt's case – did note that the judgment was by default, that Smith's lawyer called it "unlawful," that Smith denied that she was guilty of any wrongdoing, and that Smith accused Wilt of retaliating against her for Smith's complaints about substandard housing. Payne Decl., Ex. A at A1.

Finally, plaintiff also appears to argue that the fair and true report privilege cannot apply here because the Wilt and Cook proceedings were "under seal" to protect their confidentiality. *See, e.g.,*

7

Amended Complaint, ¶ 11. However, the fact that the underlying proceedings may have been confidential or otherwise not open to the public, does not defeat the application of the privilege. *See, e.g., Dorsey,* 973 F.2d at 1435 ("We thus reject Dorsey's argument that the privilege cannot apply to family court proceedings from which the general public is excluded."); *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036 (Cal. App. 1997) (applying privilege to newspaper reports about a confidential audit).

### B. Remaining Statements Not Actionable

Plaintiff also claims that defendants' articles stated or implied she was "filthy." Amended Complaint, ¶ 12. Plaintiff, however, fails to identify where this is stated or implied in any of the articles. Even if plaintiff had identified where the filthy statement or implication arose in the articles, the claim would still be barred. In at least one judicial decision, the Superior Court found that "Smith failed to keep the unit in a clean and sanitary condition." Payne Decl., Ex. C at C15. Any implication that Smith was filthy, therefore would likely fall within the true and fair report privilege. *See supra.* Moreover, Smith has failed to submit any evidence that the she was not filthy, *i.e.*, a declaration demonstrating the housing units she vacated were clean and in good condition. Finally, any statement that Smith was filthy is non-actionable opinion. The articles disclose in detail the conditions the Cook housing unit was left in upon Smith's departure. *See, e.g.*, Payne Decl. Ex. A at A4, A6. Opinions are not actionable where the author discloses the facts on which the opinion is based. *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment."). For each of these reasons, this claim fails as a matter of law.

Plaintiff also argues in both her initial and Amended Complaints that defendants somehow portrayed plaintiff in false light or defamed her by falsely stating that the Press Democrat defendants tried to contact plaintiff for comment prior to publication, but they did not. *See* Complaint, ¶ 10; Amended Complaint, ¶ 12. Plaintiff does not explain where exactly these false statements appear in the articles. In the April 9, 2010 article, plaintiff is quoted at length. Payne Decl., Ex. A at A1. In her Opposition, plaintiff admits that she was interviewed by defendant Payne. *See* Oppo. at 4 ("despite his formidably rude, cutting commentary so as to constantly interrupt Plaintiff, Plaintiff did manage to talk

8

to Mr. Payne"). Plaintiff does not submit any evidence that she was not contacted by defendants for her side of the story, *e.g.*, through a declaration under penalty of perjury. Plaintiff also fails to explain how these allegedly false statements could have damaged her – which is particularly significant in light of the fact that the much more serious statements describing her as a scammer, serial squatter and "filthy" are either privileged or non-actionable. In sum, because plaintiff failed to demonstrate through admissible evidence that the statements regarding the Press Democrats defendants' attempts to contact her were false or demonstrate how she was damaged by these statements standing on their own, plaintiff fails to state a claim as a matter of law.

Finally, plaintiff alleges defendants falsely stated Smith used aliases. Amended Complaint, ¶ 12. The statement at issue, is attributed to Cook's attorney and based on statements plaintiff made at trial. Payne Decl., Ex. A at A13. However, plaintiff submits no evidence, *e.g.*, through a declaration under penalty of perjury, that the comments were *not* made during the Cook proceedings or that she has *not* used aliases. If the comments were made during the Cook proceedings – and plaintiff does not argue they were not – they would be covered by the fair and true report privilege. *See supra*. Plaintiff has also failed to explain how this singular statement – if in fact false and if not protected by the fair and true report privilege – could have damaged her in light of the other, much more significant allegations against her which are privileged or non-actionable.

As such, none of the statements that plaintiff claims were false and defamatory are actionable. The other claims plaintiff attempts to raise – false light, intrusion on solitude, public disclosure of private facts and civil conspiracy – rest on the same facts as her defamation claim. As such, they are all duplicative and must be dismissed as well. *See, e.g., McClatchy Newspapers*, 189 Cal. App. 3d at 965 (where "an action for libel is alleged, a false-light claim based on the same facts (as in this case) is superfluous and should be dismissed."); *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 265 (1984) (summary judgment on defamation claim meant that claims for false light, invasion of privacy, and intrusion on privacy by publication of private facts must also fail; "liability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication.").

For the foregoing reasons, the Court concludes that plaintiff's claims fail as a matter of law and the motion to strike must be GRANTED. The Court finds that leave to amend should not be allowed

in this case because, as noted above, the majority of the statements plaintiff claims to have defamed her are absolutely privileged as fair and true reports of judicial proceedings. Moreover, the purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment. *See, e.g., Lockheed Missiles & Space Co.*, 190 F.3d at 971. In these circumstances, leave to amend is not necessary or appropriate. *See, e.g., Blackburn v. ABC Legal Servs.*, 2011 U.S. Dist. LEXIS 109817 (N.D. Cal. Sept. 27, 2011) (rejecting request for leave to amend complaint dismissed under anti-SLAPP statute where plaintiff failed to meet burden to submit evidence demonstrating probability of success); *see also Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (Cal. App. 2001) ("Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.").[6]

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is STRICKEN under Cal. Code. Civ. Proc, section 425.16 and DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: 10/20/11

SUSAN ILLSTON
United States District Judge

---

[6] In light of the Court's ruling, plaintiff's ex parte request to continue consideration of the motion to strike in order to take discovery on actual malice is DENIED as moot. Docket No. 31. No amount of discovery would cure the deficiencies identified in plaintiff's claims. *See, e.g., McClatchy Newspapers*, 189 Cal. App. 3d at 974 (fair and true report privilege applies even where reporter knew statement made in proceeding was false).

10